IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARITY GOSE,

             Plaintiff,

vs.                                                            No. CIV 10-0424 JB/RHS

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF MCKINLEY AND
and UNKNOWN PERSONS 1-100,

             Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss, filed May 14, 2010 (Doc. 5).   The primary issue is whether Plaintiff Charity Gose's claims for false arrest and false imprisonment under the New Mexico Tort Claims Act, NMSA §§ 41-4-1 through 41-4-27 ("NMTCA"), are barred as untimely.  Because the statute of limitations for claims of false arrest and false imprisonment begins to run, under New Mexico law, when the imprisonment ends, and because Gose filed her Complaint for Damages Due to a Deprivation of Rights Secured by the Constitution and Laws of the United States and New Mexico Pursuant to the Federal Civil Rights Act of 1871 (42 U.S.C. § 1983) and Pursuant to the Tort Claims Act (NMSA 1978, §§ 41-4-1 et seq.), filed May 3, 2010 (Doc. 1-1)("Complaint"),  within two years of the end of her imprisonment, her NMTCA claims are timely, and the Court will deny the motion to dismiss.

**FACTUAL BACKGROUND**

According to the Complaint, on October 9, 2007, the Sierra County District Court issued a bench warrant for Gose's arrest based on an alleged probation violation.  See Complaint ¶ 9, at 3. In November 2007, she was arrested on a bench warrant in McKinley County and incarcerated at

the McKinley County Detention Center.  <u>See</u> Complaint ¶ 10, at 3.  On December 18, 2007, the State

withdrew its motion to revoke Gose's probation, and the Sierra County District Court ordered her

released to the NCI Treatment Center in Gallup, New Mexico.  <u>See</u> Complaint ¶ 12, at 3.

       On April 1, 2008, Gose was re-arrested on the same bench warrant which had been issued

on October 9, 2007.  Gose alleges that the warrant "was not cleared from NCIC."[1]  Complaint ¶ 10,

at 3.  She was placed in the McKinley County Detention Center.  <u>See</u> Complaint ¶ 13, at 3.

On April 29, 2008, the Honorable Edmund H. Kase, III, Sierra County District Judge, signed a

Stipulated Order to Recall Bench Warrant and Remove from NCIC.  <u>See</u> Complaint ¶ 14, at 3.  The

Order stated, in relevant part:

> This Matter having come before the Court upon the Parties['] stipulation that the
> Defendant was illegally arrested a second time on April 1, 2008 on a bench warrant
> issued by the Court on 10/9/07 . . . and on which the Defendant had a First
> Appearance on 12/4/07.  Despite the numerous attempts by the State and the APPO,
> the detention center in McKinley County has not provided a return for the
> Defendant's arrest in late 2007.  The bench warrant should have been cleared from
> NCIC at that time, but apparently never was, resulting in the Defendant's rearrest on
> 4/1/08.

Complaint ¶ 14, at 3-4.  Gose was subsequently released from jail.  <u>See</u> Complaint ¶ 13, at 3.  Gose

alleges that she was subjected to false arrest and false imprisonment from April  1, 2008 through

April 30, 2008 because of the failure of McKinley County law-enforcement officers and/or

corrections officers to clear the bench warrant or to file a return of service of the bench warrant,

which was served on Gose in November 2007. <u>See</u> Complaint ¶ 17, at 4.

---

[1] The National Crime Information Center ("NCIC") is a computerized index of
criminal-justice information.  The system includes listings of individuals for whom federal warrants
are outstanding.  The New Mexico Crime Information Center ("NMCIC") holds listings of
individuals for whom New Mexico warrants are outstanding. The Court believes that, because Gose
was arrested under a state and not a federal warrant, her warrant was not cleared from NMCIC.

## PROCEDURAL BACKGROUND

The procedural facts are not in dispute.  Gose's Complaint, filed in the Eleventh Judicial District Court, County of McKinley, New Mexico on April 21, 2010, asserts claims of false arrest and false imprisonment under 42 U.S.C. § 1983 and under the NMTCA.  On May 3, 2010, Defendant Board of County Commissioners of the County of McKinley ("McKinley County") removed the case to federal court.  See Defendant's Notice of Removal, filed May 3, 2010 (Doc. 1).

McKinley County moves the Court to dismiss Gose's false arrest and false imprisonment claims brought under the NMTCA as untimely.  See Motion at 1.  McKinley County argues that Gose's state claims are subject to a two-year statute of limitations and, because she was arrested on April 1, 2008, but did not file her Complaint until April 21, 2010, the statute of limitations had expired, her state claims are barred, and the Court should dismiss them.  McKinley County requests that the Court dismiss the state claims in Gose's Complaint with prejudice.

In her response, Gose concedes that, under NMSA 1978, § 41-4-15A, her claims filed under the NMTCA must be filed within two years of the date of the occurrence.  See Response in Opposition to Motion to Dismiss at 1, filed May 28, 2010 (Doc. 7).  Gose argues, however, that the statute of limitations did not begin to run until her false imprisonment ended on April 30, 2008, and thus her state claims are timely.  See Response at 1.  Gose requests that the Court deny McKinley County's motion to dismiss.  See Response at 2.

On June 3, 2010, McKinley County filed a Notice of Completion of Briefing.  See Doc. 8.  Pursuant to the Local Civil Rules of the United States District Court for the District of New Mexico, D.N.M. LR-Civ. 7.3(b), McKinley County notified the Court that briefing is complete on its motion to dismiss and that the motion is ready for decision.  Thus, there are only two documents before the Court:  (i) the Defendant's Motion to Dismiss; and (ii) the Plaintiff's Response in Opposition to

Defendant's Motion to Dismiss.

### STANDARD FOR A MOTION TO DISMISS UNDER RULE 12(b)(6)

Rule 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which it can grant relief.  When ruling on a motion to dismiss, the court must accept as true well-pled factual allegations, but also consider whether "they plausibly give rise to an entitlement to relief." Barrett v. Orman, No. 10-7000, 2010 U.S. App. LEXIS 7807, at *5 (10th Cir. Apr. 15, 2010)(quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009)).  Under rule 12(b)(6), a motion to dismiss "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976)(citing Jones v. Hopper, 410 F.2d 1323 (10th Cir. 1969)).  A motion to dismiss is a request to dismiss a case before discovery has taken place and thus permits only an assessment whether a complaint is sufficient on its face.  In adjudicating a motion to dismiss, a court may neither grant the motion because it believes it is unlikely the plaintiff can prove the allegations, see Robbins v. Oklahoma, 519 F.3d 1242, 1246 (10th Cir. 2008), nor "weigh potential evidence that the parties might present at trial" in assessing the motion's merit, Duran v. Carris, 238 F.3d 1268, 1270 (10th Cir. 2000)(quoting Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999)).  It is not the court's role to weigh potential evidence that the parties might present a trial, but rather to determine whether the plaintiff's complaint states a legally sufficient claim upon which the court can grant relief. See Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d at 1236.

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A complaint does not

"suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 129 S. Ct. at 1949 (internal alterations, citations, and quotations omitted).  See Bixler v. Foster, 596 F.3d 751, 756 (10th Cir. 2010)("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")(quoting Ashcroft v. Iqbal, 129 S. Ct. at 1949).  But Dismissal is not appropriate, however, where the complaint contains "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. at 570.

"[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555-56 (internal citation omitted).  "The [Supreme] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 547) (alterations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 129 S. Ct. at 1949.  "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (emphasis in original).  The court is not required to accept the plaintiff's conclusions of law or asserted application of law to the alleged facts.  See Hackford v. Babbitt, 14 F.3d 1457, 1465 (10th Cir. 1994); Olpin v. Ideal Nat'l Ins. Co.,

419 F.2d 1250, 1255 (10th Cir. 1969).  Nor is the court required to accept as true legal conclusions

that are presented as factual allegations.  See Brooks v. Sauceda, 85 F. Supp. 2d 1115, 1123

(D. Kan. 2000) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

### LAW REGARDING THE NMTCA'S STATUTE OF LIMITATIONS

Under well-settled New Mexico law, the NMTCA provides governmental entities, such as

McKinley County, with immunity from tort liability unless the NMTCA specifically waives that

immunity.  See Weinstein v. City of Santa Fe, 121 N.M. 646, 649, 916 P.2d 1313, 1316 (1996);

Abalos v. Bernalillo County District Attorney's Office, 105 N.M. 554, 557, 734 P.2d 794, 797

(Ct. App.), cert. quashed, 106 N.M. 35, 738 P.2d 907 (1987); NMSA 1978, § 41-4-4.  The NMTCA,

at NMSA 1978, § 41-4-15, requires that a suit seeking relief under the NMTCA be filed within two

years of the occurrence.  See Dutton v. McKinley City Bd. of Comm'rs, 113 N.M. 51, 53, 822 P.2d

1134, 1136 (Ct. App. 1991)(citing Cozart v. Town of Bernalillo, 99 N.M. 737, 663 P.2d 713

(Ct. App. 1983)).  Section 41-4-15A states:

> Actions against a governmental entity or a public employee for torts shall be forever
> barred, unless such action is commenced within two years after the date of
> occurrence resulting in loss, injury or death, except that a minor under the full age
> of seven years shall have until his ninth birthday in which to file.  This subsection
> applies to all persons regardless of minority or other legal disability.

NMSA 1978, § 41-4-15A (emphasis added).

In Aragon & McCoy v. Albuquerque National Bank, 99 N.M. 420, 659 P.2d 306 (1983) the

Supreme Court of New Mexico stated: "The plain language of the statute [§ 41-4-15A] indicates that

the period of limitations began to run when an 'occurrence resulting in loss' took place.  Until such

a loss took place, the statute of limitations could not begin to run."  99 N.M. at 424, 659 P.2d at 311.

See Estate of Gutierrez v. Albuquerque Police Dep't, 104 N.M. 111, 113, 717 P.2d 87, 89 (Ct. App.

1986)("The plain language of the statute indicates when the period of limitations begins to run.").

The Supreme Court of New Mexico has stated that the NMTCA statute of limitations commences when an "injury manifests itself and is ascertainable, rather than when the wrongful or negligent act occurs." <u>Maestas v. Zager</u>, 141 N.M. 154, 158, 152 P.3d 141, 145 (2007)(citation omitted); <u>Saiz v. Belen Sch. Dist.</u>, 113 N.M. 387, 401 n. 12, 827 P.2d 102, 116 n. 12 (1992)(noting that "a statute of limitations begins to run when a plaintiff's cause of action accrues or is discovered"); <u>Long v. Weaver</u>, 105 N.M. 188, 191, 730 P.2d 491, 494 (Ct. App. 1986)("We have recognized that under the Tort Claims Act the limitation period commences when an injury manifests itself and is ascertainable, rather than when the wrongful or negligent act occurs."). <u>See also</u> 1 C. Corman, <u>Limitation of Actions</u> § 7.4.1, at 526-527 (1991)("Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages.  The cause of action accrues even though the full extent of the injury is not then known or predictable.")

## NEW MEXICO LAW REGARDING FALSE ARREST AND FALSE IMPRISONMENT

"Under New Mexico law, 'false imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so.'" <u>Romero v. Sanchez</u>, 119 N.M. 690, 895 P.2d 212, 215 (1995)(quoting NMSA 1978, § 30-4-3).  False arrest or unlawful detention occurs when the "facts available to [a] detaining officer would [not] warrant [a] person of reasonable caution to believe detention appropriate." <u>Romero v. Sanchez</u>, 895 P.2d at 215 ("Unlawful detention has similar requirements" to false imprisonment). While the Supreme Court of New Mexico appears to recognize them as separate torts, the New Mexico Court of Appeals more recently has found that "[a] false arrest is merely one way of committing false imprisonment." <u>Santillo v. N.M. Dep't of Pub. Safety</u>, 143 N.M. 84, 88, 173 P.3d 6, 11 (Ct. App. 2007)(citing 32 Am. Jur. 2d False Imprisonment § 3 (2007)). <u>See</u> <u>Wallace v. Kato</u>,

549 U.S. 384, 388-89 (2007)("False arrest and false imprisonment overlap; the former is a species

of the latter."); Butler ex rel. Butler v. Rio Rancho Pub. Sch. Bd. of Educ., 245 F. Supp. 2d 1203,

1211 (D.N.M. 2002)("The torts of false arrest and false imprisonment are similar."); D. Dobbs, The

Law of Torts § 36, at 67 (2000)("False arrest is a term that describes the setting for false

imprisonment when it is committed by an officer or by one who claims the power to make an

arrest.").

The New Mexico courts have not stated when a plaintiff's causes of action for false arrest

and for false imprisonment accrue.  The New Mexico courts, however, often look to the law as

stated in the Restatement (Second) of Torts. See Montanez v. Cass, 89 N.M. 32, 38, 546 P.2d 1189,

1195 (Ct. App. 1975)("It has long been the policy of our courts to follow in the footsteps of the

Restatement of Torts, 2d.").  In Schmitz v. Smentowski, 109 N.M. 386, 785 P.2d 726 (1990), the

Supreme Court of New Mexico stated: "We have also been very willing to adopt the view of the

Restatement of Torts to assist our development of new tort areas."  109 N.M. at 393, 785 P.2d at

736.  The Supreme Court of New Mexico explained:

> Accordingly, New Mexico has recognized as tortious inducing a breach of contract,
> adopting the view promulgated in Restatement of Torts § 766 (1939). Wolf v. Perry,
> 65 N.M. 457, 461, 339 P.2d 679, 681 (1959)(requiring that "one who, without
> justification or privilege to do so, induces a third person not to perform a contract
> with another, is liable to the other for the harm caused thereby"); see also Williams
> v. Ashcraft, 72 N.M. 120, 381 N.M. 55 (1963)(recognizing the tort of wrongful
> interference with another's business relations).  We have adopted the cause of action
> of intentional interference with prospective contractual relations, relying on the tort
> as articulated in Restatement (Second) of Torts § 766(B) (1977).  M & M Rental
> Tools, Inc. v. Milchem, Inc., 94 N.M. 449, 452-54, 612 P.2d 241, 244-46 (Ct. App.
> 1980)(one who, with "bad motive," intentionally interferes with another's
> prospective contractual relations, is subject to liability); Anderson v. Dairyland Ins.
> Co., 97 N.M. 155, 158-59, 637 P.2d 837, 840-41 (1981).  These torts reflect the
> underlying theory of prima facie tort as applied to contractual relations -- the
> underlying malicious motive of a defendant's actions, done without justification,
> makes an otherwise lawful act, competition, tortious.

New Mexico has also recognized the tort of intentional infliction of emotional distress, relying on Restatement (Second) of Torts § 46 (1965), Mantz v. Follingstad, 84 N.M. 473, 479-80, 505 P.2d 68, 74-75 (Ct. App. 1972); Ramirez v. Armstrong, 100 N.M. 538, 673 P.2d 822 (1983), and we have recognized that the intentional and wrongful deprivation of the right to vote or hold public office creates tort liability. Valdez v. Gonzalez, 50 N.M. 281, 176 P.2d 173 (1946).

Schmitz v. Smentowski, 109 N.M. at 393, 785 P.2d at 736. See also Baldonado v. El Paso Natural Gas Co., 143 N.M. 288, 294, 176 P.3d 277, 283 (2007)(adopting the elements of intentional infliction of emotional distress from Restatement (Second) of Torts § 46); Berlangieri v. Running Elk Corp., 134 N.M. 341, 347, 76 P.3d 1098, 1104 (2003)("The rule [for acceptance of risk] followed by the courts of this state thus far tracks the rule followed in a majority of other courts, as well as the Restatement (Second) of Torts § 496B (1965)").  The Supreme Court of New Mexico, however, has also stated that "the Restatement is merely persuasive authority entitled to great weight that is not binding on this Court."  Gabaldon v. Erisa Montg. Co., 128 N.M. 84, 90, 990 P.2d 197, 204 (1999).  See Blake v. Public Serv. Co, 134 N.M. 789, 82 P.3d 960 (Ct. App. 2003)(noting that New Mexico courts have not adopted Restatement (Second) of Torts § 324A, Liability to Third Person for Negligent Performance of Undertaking, but declining to decide whether to do so).

"For false imprisonment, the statute [of limitations] begins to run only when the imprisonment ends, since the period of imprisonment is treated as a unit."  Restatement (Second) of Torts § 899, cmt. c (1979).  See Wallace v. Kato, 549 U.S. at 389 ("The running of the statute of limitations on [common-law] false imprisonment is subject to a distinctive rule -- dictated, perhaps, by the reality that the victim may not be able to sue while he is still imprisoned.").  The Restatement (Second) of Torts does not state when an action for false arrest accrues.  The Restatement, however, appears to treat false arrest as a part of false imprisonment.  See Restatement (Second) of Torts Index at 530 ("False Arrest: See False Imprisonment).  According to the Restatement (Second) of

Torts: "If there is nothing more than the false arrest and the accused is released without any further proceeding, his remedy is an action for false imprisonment."  Restatement (Second) of Torts § 654.

Other courts have taken different approaches to when common-law claims of false arrest and false imprisonment accrue and the statute of limitations begins to run.  There appear to be three different times from which courts have found the statute of limitations begins to run: (i) at the time of arrest, see Wallace v. City of Chicago, 471 F. Supp. 2d 894, 898 (N.D. Ill. 2004)(applying Illinois law, and holding that the statute of limitations on a false imprisonment claim begins to run at the time false imprisonment begins);Leatherwood v. Key West, 347 So.2d 441, 442 (Fla. App. 1977) ("The cause of action for false arrest and imprisonment accrued on the day of plaintiff's arrest . . . ."), cert. denied, 358 So.2d 131 (Fla. 1978); Brooks v. Pennington, 995 So.2d 733, 737 (Miss. Ct. App. 2007)(stating that "a complaint for false arrest and false imprisonment accrues on the date of arrest."); (ii) at the time of arraignment or when legal process is initiated, see Johnson v. Blackwell, 885 N.E.2d 25, 31 (Ind. Ct. App. 2008)(holding that "Johnson's cause of action for false imprisonment/false arrest accrued when he was bound over for trial in March 2003," and not when he was arrested in February 2003 or when he was released in 2006); Dunn v. Felty, 226 S.W.3d 68, 72 (Ky. 2007)(holding that the false imprisonment ended when the plaintiff began being held pursuant to legal process -- the date when he was arraigned on the charges -- because, based on the elements of false imprisonment, he had a complete cause of action at that point); and (iii) at the time of termination of the false or illegal imprisonment, see Hoffman v. County of Delaware, 41 F. Supp. 2d 195, 216 (N.D.N.Y. 1999)("Under New York law, false arrest and false imprisonment claims accrue on the date of the release from confinement."), aff'd 205 F.3d 1323 (2d Cir. 2000); Adler v. Beverly Hills Hosp., 594 S.W.2d 153, 154 (Tex. Civ. App. Dallas 1980)("We hold that false imprisonment is a continuing tort and that the cause of action for the entire period of

imprisonment accrues when the detention ends.");  Stafford v. Muster, 582 S.W.2d 670, 680 (Mo. 1979)(stating that, for "false imprisonment in particular, the authorities overwhelmingly hold that a cause of action for false imprisonment accrues on the discharge from imprisonment"); Belflower v. Blackshere, 1955 O.K. 74, 281 P.2d 423, 425 (Okla. 1955)(holding that a cause of action for illegal arrest and false imprisonment accrued at the time plaintiff was released from his alleged illegal restraint and not when the proceedings by which his arrest occurred terminated).

In Wallace v. Kato, Wallace filed suit under 42 U.S.C. § 1983 seeking damages for an unlawful arrest and the Supreme Court of the United States, in Justice Scalia's majority opinion, decided whether his suit was timely.  See 549 U.S. at 386.  Justice Scalia noted that "[a]spects of § 1983 which are not governed by reference to state law are governed by federal rules conforming in general to common-law tort principles."  549 U.S. at 388.  Justice Scalia addressed the accrual of common-law false arrest and false imprisonment claims, and concluded that "[f]alse arrest and false imprisonment overlap; the former is a species of the latter …" and that he would "refer to the two torts together as false imprisonment." Id. at 389.  He noted that "[t]he sort of unlawful detention remediable by the tort of false imprisonment is detention without legal process," and that "[l]imitations begin to run against an action for false imprisonment when the alleged false imprisonment ends." Id.  "Reflective of the fact that false imprisonment consists of detention without legal process, false imprisonment ends once the victim becomes held pursuant to such process -- when, for example, he is bound over by a magistrate or arraigned on charges." Id.  In a footnote, Justice Scalia noted:

> This is not to say, of course, that petitioner could not have filed suit immediately upon his false arrest.  While the statute of limitations did not begin to run until petitioner became detained pursuant to legal process, he was injured and suffered damages at the moment of his arrest, and was entitled to bring suit at that time.  See Adler v. Beverly Hills Hospital, 594 S.W.2d 153, 156 (Tex. Civ. App. 1980)("We

-11-

> may concede that a person falsely imprisoned has the right to sue on the first day for
> his detention").

549 U.S. at 390 n.3.

## ANALYSIS

McKinley County moves the Court to dismiss Gose's state law claims for false arrest and false imprisonment because she filed her suit more than two years after the date of her arrest on April 1, 2008. Gose argues that her claims accrued when her alleged unlawful imprisonment ended and thus that she timely filed her claims. Because the Court finds that the New Mexico Supreme Court would likely follow in the footsteps of the Restatement (Second) of Torts, which states that the statute of limitations begins to run from the time imprisonment ends, the Court will deny McKinley County's motion to dismiss.

No New Mexico court has addressed when false arrest or false imprisonment claims accrue, or when the statute of limitations begins to run. Because New Mexico has not directly addressed this issue, this Court must make a determination, under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), how the Supreme Court of New Mexico would rule. See Pehle v. Farm Bureau Life Ins. Co., 397 F.3d 897, 901 (10th Cir. 2005); UPS v. Weben Indus., 794 F.2d 1005, 1008 (5th Cir. 1986)(stating that, "when making an Erie-guess in the absence of explicit guidance from the state courts, we must attempt to predict state law, not to create or modify it."). The Court may consider all resources available, including decisions of New Mexico courts and the general trend of authority. See Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1228 (10th Cir. 2001).

The New Mexico Court of Appeals has found that "[a] false arrest is merely one way of committing false imprisonment." Santillo v. N.M. Dep't of Pub. Safety, 143 N.M. at 88, 173 P.3d at 11 (citing 32 Am. Jur. 2d False Imprisonment § 3 (2007)). The Supreme Court, in discussing the

two common law torts, also has found that "[f]alse arrest and false imprisonment overlap; the former is a species of the latter."  Wallace v. Kato, 549 U.S. at 388-89 (2007).  See D. Dobbs, The Law of Torts § 36, at 67 (2000)("False arrest is a term that describes the setting for false imprisonment when it is committed by an officer or by one who claims the power to make an arrest."); J. Levin, Distinction Between False Imprisonment and False Arrest, 32 Am. Jur. 2d False Imprisonment § 3 (2010)("Some courts have stated that false arrest and false imprisonment are distinguishable only in terminology.  The two have been called virtually indistinguishable and identical.").  While the Court need not decide, on this motion, whether in New Mexico the claims for false arrest and for false imprisonment are the same tort, the Court believes that the Supreme Court of New Mexico would find that claims for false arrest and false imprisonment accrue at the same time.

Although no New Mexico court has stated when the statute of limitations begins to run on false arrest and false imprisonment claims, the Restatement (Second) of Torts is clear for false imprisonment: "For false imprisonment, the statute [of limitations] begins to run only when the imprisonment ends, since the period of imprisonment is treated as a unit."  Restatement (Second) of Torts § 899, cmt. c.  See Wallace v. Kato, 549 U.S. at 389 (stating that "[l]imitations begin to run against an action for false imprisonment when the alleged false imprisonment ends.").  Also, the Restatement (Second) of Torts appears to treat the tort of false arrest as the same tort or as a subset of the tort of false imprisonment.  See Restatement (Second) of Torts § 654 ("If there is nothing more than the false arrest and the accused is released without any further proceeding, his remedy is an action for false imprisonment."); Restatement (Second) of Torts Index at 530 ("False Arrest: See False Imprisonment).  The Court finds that, because New Mexico courts have been "very willing to adopt the view of the Restatement of Torts to assist [its] development of new tort areas," Schmitz v. Smentowski, 109 N.M. at 393, 785 P.2d at 736, the Supreme Court of New Mexico would adopt

the finding of the Restatement (Second) of Torts and hold that the statute of limitations for false

arrest and for false imprisonment claims begins to run when the imprisonment ends.

The approach of the Restatement (Second) of Torts is also consistent with New Mexico tort

jurisprudence.   According to the Supreme Court of New Mexico, "[t]he plain language of

[§ 41-4-15A] indicates that the period of limitations began to run when an 'occurrence resulting in

loss' took place." Aragon & McCoy v. Albuquerque National Bank, 99 N.M. at 424, 659 P.2d at

311.   Specifically, statute of limitations commences when an "injury manifests itself and is

ascertainable, rather than when the wrongful or negligent act occurs." Maestas v. Zager, 141 N.M.

154, 158, 152 P.3d 141, 145 (2007)(citation omitted).  See Saiz v. Belen Sch. Dist., 113 N.M. 387,

401 n. 12, 827 P.2d 102, 116 n. 12 (1992)(noting that "a statute of limitations begins to run when

a plaintiff's cause of action accrues or is discovered").   "Under New Mexico law, 'false

imprisonment consists of intentionally confining or restraining another person without his consent

and with knowledge that he has no lawful authority to do so.'" Romero v. Sanchez, 119 N.M. 690,

895 P.2d 212, 215 (1995)(quoting NMSA 1978, § 30-4-3).  False arrest or unlawful detention occurs

when the "facts available to [a] detaining officer would [not] warrant [a] person of reasonable

caution to believe detention appropriate." Romero v. Sanchez, 895 P.2d at 215 ("Unlawful detention

has similar requirements" to false imprisonment).  While a wrongful act occurred when Gose was

falsely arrested, the injury for the false arrest manifested itself and was ascertainable when it was

discovered that there was no lawful authority to do so -- which arguably was learned when Judge

Kase issued the order stating she had been unlawfully arrested and imprisoned.  Moreover, if New

Mexico law treats her imprisonment as a unit, arguably, the injury for the false imprisonment fully

manifested itself and was ascertainable when she was released.  See Restatement (Second) of Torts

§ 899, cmt. c (1979)("For false imprisonment, the statute [of limitations] begins to run only when

the imprisonment ends, since the period of imprisonment is treated as a unit.").

Further, the accrual rule that the Court believes the Supreme Court of New Mexico would adopt seems to be in line with what commentators and other courts have found to be the current trend.  As one commentator stated:

> As shown in the following cases, the decision in Belflower v. Blackshere, 281 P.2d 423 (Okla. 1955), holding that under statutes barring actions for false imprisonment begun more than a specified time after the accrual of the cause of action the limitation begins to run from the termination of the imprisonment and not from the time when the proceedings under which the plaintiff's arrest occurred ended, is in accord with the general rule on the subject.

M.C. Dransfield, When Statute of Limitations Begins to Run Against Action for False Imprisonment or False Arrest, 49 A.L.R.2d 922 (2010)(citing cases).  See Stafford v. Muster, 582 S.W.2d at 680 (stating that, for "false imprisonment in particular, the authorities overwhelmingly hold that a cause of action for false imprisonment accrues on the discharge from imprisonment").  The Supreme Court in Wallace v. Kato recently explained that the statute of limitations for a Fourth-Amendment claim for false arrest or imprisonment "begin[s] to run . . . when the alleged false imprisonment ends." 549 U.S. at 389 (internal quotation marks omitted).  The Supreme Court found that the false imprisonment ends for either tort when the victim is released, or when the victim's imprisonment becomes "pursuant to [legal] process--when, for example, he is bound over by a magistrate or arraigned on charges."  Id.  See Stevenson v. Grace, 356 Fed. Appx. 97, 98 (10th Cir. 2009)("Specifically, a Fourth Amendment claim for false arrest/false imprisonment accrues when the victim is released from custody or when the victim is bound over on charges, whichever occurs first.")(citing Mondragon v. Thompson, 519 F.3d 1078, 1082-83 (10th Cir. 2008)).  Moreover, several states have found that claims for false arrest and false imprisonment accrue when the false imprisonment ends or when imprisonment becomes pursuant to legal process.  See Hoffman v.

County of Delaware, 41 F. Supp. 2d at 216 ("Under New York law, false arrest and false imprisonment claims accrue on the date of the release from confinement."), aff'd 205 F.3d 1323 (2d Cir. 2000); Adler v. Beverly Hills Hosp., 594 S.W.2d at 154 ("We hold that false imprisonment is a continuing tort and that the cause of action for the entire period of imprisonment accrues when the detention ends."); Belflower v. Blackshere, 281 P.2d at 425 (holding that a cause of action for illegal arrest and false imprisonment accrued at the time plaintiff was released from his alleged illegal restraint and not when the proceedings by which his arrest occurred terminated). See also Johnson v. Blackwell, 885 N.E.2d 25, 31 (Ind. Ct. App. 2008)(holding that "Johnson's cause of action for false imprisonment/false arrest accrued when he was bound over for trial in March 2003"); Dunn v. Felty, 226 S.W.3d 68, 72 (Ky. 2007)(holding that the false imprisonment ended when the plaintiff began being held pursuant to legal process -- the date when he was arraigned on the charges).

Finally, there are sound policy reasons for the accrual rule that the Court believes the Supreme Court of New Mexico would adopt.  The Supreme Court of the United States noted the policy behind finding that the statute of limitations begins to run against an action for false imprisonment when the alleged imprisonment ends: "[T]he reality that the victim may not be able to sue while he is still imprisoned."  Wallace v. Kato, 549 U.S. at 389.  Moreover, false arrest and false imprisonment arise from detention without legal process.  It is when no legal process is instituted that injury for false arrest or false imprisonment would manifest.  Such discovery of a lack of legal process may not be apparent at the time of arrest -- a person may be held for some time after the arrest but before the institution of legal process.  Gose's situation is a good example -- she was arrested on April 1, 2008, but did not learn of the deprivation of legal process until April 29, 2008 through Judge Kase's order.  The Court agrees with the Supreme Court of the United States that

-16-

Gose possibly could have filed suit immediately upon her false arrest, but believes the better rule is that the statute of limitations does not begin to run until the false imprisonment ends or she is detained pursuant to legal process for trial.  See Wallace v. Kato, 549 U.S. at 390 n.3 ("While the statute of limitations did not begin to run until petitioner became detained pursuant to legal process, he was injured and suffered damages at the moment of his arrest, and was entitled to bring suit at that time."); Adler v. Beverly Hills Hospital, 594 S.W.2d at 156.

Gose filed her Complaint on April 21, 2010.  She was released from her unlawful detention at the end of April 2008, the last date that can be characterized as a loss or injury under § 41-4-15A, and the point at which Judge Kase indicated that she would not be detained pursuant to legal process.  The statute of limitations for claims under the NMTCA is two years, see § 41-4-15A, and therefore Gose's claims were filed within two years of when her state law claims accrued.  Because Gose's claims are timely, the Court will deny the motion to dismiss.

**IT IS ORDERED** that the Defendant's Motion to Dismiss is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

William G. Stripp
Ramah, New Mexico

     *Attorney for the Plaintiff*

William D. Slease
Jonlyn M. Martinez
Slease & Martinez, P.A.
Albuquerque, New Mexico

     *Attorneys for Defendant Board of County*
       *Commissioners of the County of McKinley*