## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CHARITY GOSE,

       Plaintiff,

vs.                                            No. CIV 10-0424 JB/RHS

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF MCKINLEY AND
and UNKNOWN PERSONS 1-100,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Motion for Summary Judgment, filed January 20, 2011 (Doc. 21)("Motion"). The Court held a hearing on April 15, 2011. The primary issues are: (i) whether the Court should dismiss the unknown defendants from the action; (ii) whether there is a genuine issue of material fact on Plaintiff Charity Gose's 42 U.S.C. § 1983 claim; and (iii) whether there is a genuine issue of material fact on Gose's New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-1 through 41-4-30 ("NMTCA"), claim. The Court will dismiss without prejudice the unnamed Defendants from the action, because Gose has not offered a description of the unnamed Defendants that is sufficient to identify them for service of process and inclusion in the case. The Court will grant summary judgment on Gose's § 1983 claim, because there is no evidence that one of the correctional officers at McKinley County Adult Detention Center ("MCADC") intentionally failed to file a return of service for Gose's bench warrant, and, furthermore, there is no evidence that a policy was the moving force behind the constitutional deprivation or that the municipality's failure to train or supervise was the result of deliberate indifference. Having disposed of Gose's federal claims, the Court remands her remaining state-law

claims to the Eleventh Judicial District Court, McKinley County, State of New Mexico.

## FACTUAL BACKGROUND

In its motion for summary judgment, Defendant Board of County Commissioners of the County of McKinley ("McKinley County") set forth a statement of material facts. In her response, Gose  disputed four of McKinley County's asserted facts, stating that the allegations were inaccurate. Several days later, Gose filed her affidavit in opposition to McKinley County's motion. In McKinley County's reply, it argues that the Court should not consider Gose's affidavit, because it is a sham affidavit.

The United States Court of Appeals for Tenth Circuit has stated that "[t]here is authority for the proposition that in determining whether a material issue of fact exists, an affidavit may not be disregarded because it conflicts with the affiant's prior sworn statements." Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986)(citing 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2738, at 473-74 (2d ed. 1983); 6 J. Moore & J. Wicker, Moore's Federal Practice ¶ 56.22 [1], at 56-1325 to 56-1326 (1985 ed.)). There are situations, however, where courts "disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." Franks v. Nimmo, 796 F.2d at 1237 (citing Foster v. Arcata Assocs., Inc., 772 F.2d 1453, 1462 (9th Cir. 1985); Biechele v. Cedar Point, Inc., 747 F.2d 209, 215 (6th Cir. 1984); Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657-58 (11th Cir. 1984); Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1364 (8th Cir. 1983); Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969)). The policy underlying these decisions is the "conclusion that the utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony." Franks v. Nimmo, 796 F.2d at 1237 (citation omitted).

-2-

> To determine whether a contradicting affidavit seeks to create a sham fact issue, [the Tenth Circuit] ha[s] looked to three factors: whether: "(1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain."

Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 973 (10th Cir. 2001)(citing Rios v. Bigler, 67 F.3d 1543, 1551 (10th Cir. 1995)).  In Ralston v. Smith & Nephew Richards, Inc., the Tenth Circuit found that the district court did not abuse its discretion in excluding later contradictory declarations in rendering its summary judgment ruling.  See 275 F.3d at 973.  The Tenth Circuit noted that there was no question that the declarant was cross-examined in his deposition, "that he had access to the pertinent evidence at the time of his deposition," and "that there was nothing in the earlier deposition testimony reflecting any level of confusion or uncertainty concerning" the declarant's testimony "requiring clarification or explanation."  275 F.3d at 973.

The Court will consider Gose's affidavit in ruling on McKinley County's motion for summary judgment.  Although Gose was cross-examined during her deposition, and had access to the pertinent evidence at the time of her deposition, Gose's affidavit explains that, during her deposition, she was confused.  Gose states:

> At my deposition on January 20, 2011, Ms. Jonlyn Martinez, Attorney at Law, asked me questions about my arrest.  I was confused about the difference between different kinds of law enforcement officers.  I thought I was arrested by a Gallup Police officer, but I was wrong.
>
> After my deposition, I read the allegations of Lieutenant Kamaal Ashley of the McKinley County Adult Detention Center in her Affidavit attached to the motion for summary judgment.  What she said did not seem right to me, so I spoke to my attorney William Stripp and then began searching for records.  I found a Report of Violation (Probation) that was written by my probation officer Sean Gifford on September 27, 2007.  Reading the report helped me remember what happened.

Plaintiff Charity Gose's Affidavit in Opposition to Defendant's Motion for Summary Judgment

¶¶ 3-4, at 1-2 (dated February 10, 2011), filed February 13, 2011 (Doc. 23).  Unlike Ralston v. Smith & Nephew Richards, Inc., where the Tenth Circuit found that the district court did not abuse its discretion in excluding later contradictory declarations in ruling on a motion for summary judgment when the declarant was cross-examined during his deposition, had the pertinent evidence at the time of his deposition, and when there was nothing reflecting confusion during the deposition, Gose has explained that she was confused during her deposition, and that only upon reading Ashley's affidavit did she search for records and discover the information that she includes in her affidavit.  This statement is not one where Gose is attempting to "create an issue of fact merely by submitting an affidavit contradicting h[er] own prior testimony."  Franks v. Nimmo, 796 F.2d at 1237 (citation omitted).  Instead, Gose represents that the depiction of events in her affidavit is the accurate depiction of what happened and that her previous depiction is not accurate.  See Transcript of Hearing at 15:7-8 (taken April 15, 2011)(Stripp)("And so that's basically the fact pattern that at this point in time I believe is accurate.")("Tr.").[1]  At the hearing, Gose's counsel stated that, during Gose's deposition, several questions came up, because some of her testimony did not make sense.  See Tr. at 12:11-13 (Stripp)("When Ms. Martinez took Ms. Gose's deposition, several questions came up in my mind about her testimony and what she [was] saying, because it didn't make sense to me.").  After Gose's deposition, Gose's counsel "talked to her" and "was trying to clarify exactly what happened." Tr. at 12:15-16 (Stripp).  McKinley County's counsel stated that the Court should treat Gose's affidavit as a sham affidavit, because McKinley County was not aware of the new depiction of events in discovery, and because these issues arose only after McKinley County filed its motion for summary judgment.  See Tr. at 20:4-10, 20:16-24 (Martinez).  Although McKinley

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

County was not aware of this new depiction of events until Gose filed her response, Gose's counsel first became aware of Gose's confusion during her deposition, and Gose did not begin searching for records which would refresh her memory as to the events until she read Ashley's affidavit. Finding and reading the Report of Violation helped Gose remember the events. Despite the timing of Gose's affidavit, the Court cannot properly find that it is a sham affidavit, because the affidavit is based on "newly discovered evidence" -- evidence which Gose discovered only after reading Ashley's affidavit, which was attached to McKinley County's motion for summary judgment -- and because Gose's testimony during her deposition reflected confusion about the events, see Tr. at 12:11-13 (Stripp)("When Ms. Martinez took Ms. Gose's deposition, several questions came up in my mind about her testimony and what she [was] saying, because it didn't make sense to me."); id. at 14:23-15:1 ("Ms. Gose is not very sophisticated about legal things.  I mean she believed that this Christina Gordon was her probation officer when in fact she's an employee of a private nonprofit.").  Gose is not trying to create an issue of fact by creating a conflict with her prior testimony; rather, she is abandoning altogether her prior testimony.  While there is unfairness to McKinley County in the way that Gose has dealt with McKinley County at her deposition and now in her response on summary judgment, the Court remains, after all, a truth seeking body.  If her testimony at the deposition neither makes sense nor is her testimony, there is no reason to consider it.   The Court therefore will consider Gose's affidavit in ruling on McKinley County's motion for summary judgment.

Gose was accused of forgery, pled no contest, received a deferred sentence, and was placed on supervised probation.  See Complaint for Damages Due to a Deprivation of Rights Secured by the Constitution and Laws of the United States and New Mexico Pursuant to the Federal Civil Rights Act of 1871 (42 U.S.C. § 1983) and Pursuant to the Tort Claims Act (NMSA, 1978, §§ 41-4-1 et

seq.) ¶¶ 6-8, at 2-3, filed May 3, 2010 (Doc. 1-1)("Complaint"); Motion ¶ 1, at 2 (setting forth this

fact); Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment at 1-2, filed

February 7, 2011 (Doc. 22)(not controverting this fact).  On October 9, 2007, the Sierra County

district court issued a bench warrant for Gose because of alleged probation violations.

See Complaint ¶ 9, at 3; Motion ¶ 2, at 2 (setting forth this fact); Response at 1-2 (not controverting

this fact).  Although McKinley County asserts that Gose was transported from the Sierra County

Detention Center to the MCADC on October 9, 2007, there is evidence in the record that Gose was

at the MCADC from September 27, 2007, when she was arrested for the alleged probation

violations, through December 4, 2007.[2]

---

[2] In its motion, McKinley County asserts: "McKinley County Detention Center records
indicate that Ms. Gose was transported from the Sierra County Detention Center at 12:53 p.m. on
October 9, 2007 to the McKinley County Detention Center arriving there at 4:51 p.m."  Motion ¶ 3,
at 2 (citing Affidavit of Lt. Kamaal Ashley (executed January 20, 2011), filed January 20, 2011
(Doc. 21-1)).  In the affidavit of Lt. Kamaal Ashley, Ashley states: "I reviewed the McKinley
County Detention Center computer and determined Ms. Gose was transported from the Sierra
County Detention Center at 12:53 p.m. on October 9, 2007 to the McKinley County Detention
Center arriving there at 4:51 p.m."  Ashley Aff. ¶ 3, at 1.  Gose disputes this asserted fact, stating
that the allegation is inaccurate.  See Response at 1.  In her affidavit in opposition to the Defendants'
motion, Gose states: "I was at the McKinley County Adult Detention Center from September 27,
2007 through December 4, 2007."  Affidavit of Charity Gose (dated February 10, 2011), filed
February 13, 2011 (Doc. 23).  Gose attached a Report of Violation (Probation) to her affidavit to
support her assertion that she was at the MCADC from September 27, 2007 through December 4,
2007.  The Report of Violation states:

    Date Arrested: 09/27/2007   Date Absconded:     Delinquency Began: 0927/2007

    Arresting Agency: [MCADC]          Officers: McKinley County Detention
                                      Officers

    Where in Custody: [MCADC]          Charge: Probation Violation -- Failure
                                      to Complete the NCI Treatment
                                      Program

Report of Violation at 1.  The Report of Violation states that it was served on Gose on September
28, 2007.  See Report of Violation at 3.  In McKinley County's reply, McKinley County states that,

The Order to Show Cause and for Issuance of Bench Warrant related to the bench warrant at issue in this litigation indicates that it was filed with the Sierra County district court at 11:14 a.m. on October 9, 2007.  See Ashley Aff. ¶ 4, at 1-2; Motion ¶ 4, at 2 (setting forth this fact); Response at 1-2 (not controverting this fact).  A MCADC corrections officer gave Gose a copy of the bench warrant.[3]  See Gose Aff. ¶ 10, at 3.  On December 4, 2007, Gose was transported to Sierra County district court, where she appeared on the bench warrant.  See Complaint 11, at 3; Motion ¶ 6, at 3 (setting forth this fact); Response at 1-2 (not controverting this fact).  On December 12, 2007, the district court released Gose to a treatment center.  See Complaint ¶ 12, at 3; Motion ¶ 7, at 3 (setting

"[n]otwithstanding the Plaintiff's assertion to the contrary, the MCADC records do in fact reflect that the Plaintiff was transported from Sierra County to McKinley County on October 9, 2007." Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, filed February 24, 2011 (Doc. 24)(citing Transport Log, filed February 24, 2011 (Doc. 24-1).  The Transport Log indicates that Gose was booked into the MCADC on October 9, 2007 at 4:51, and states "Vehicle Location: SIERRA COUNTY JAIL @ 1253."  Transport Log at 1.  Although there is evidence that Gose was transported to MCADC from the Sierra County Jail on October 9, 2007, there is also evidence that Gose was in the MCADC from September 27, 2007 through December 4, 2007.  Because the Court must construe the evidence in the light most favorable to the non-moving party, the Court will construe the evidence in Gose's favor and will deem Gose's assertion that she was at the MCADC from September 27, 2007 as true.  See Hunt v. Cromartie, 526 U.S. 541, 551 (1999)(stating that the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party).

[3] In its motion, McKinley County asserts: "[I]t appears that the Sierra County Detention Center may have served the bench warrant on Ms. Gose at the Sierra County Detention Center." Motion ¶ 5, at 2 (quoting Ashley Aff. ¶ 5, at 2).  Gose responds, stating that this "allegation is inaccurate and is disputed."  Response at 1.  In her affidavit, Gose states that McKinley County's asserted fact is not right and that, "[a]s best I can remember, a corrections officer at the McKinley County Adult Detention Center gave me a copy of the bench warrant."  Gose Aff. ¶ 10, at 3.  Taking the evidence in the light most favorable to Gose, Gose was at MCADC from September 27, 2007 through December 4, 2007.  Gose recalls a MCADC corrections officer giving her a copy of the bench warrant.  Because the Court must construe the evidence in the light most favorable to the non-moving party, the Court will construe the evidence in Gose's favor and, for purposes of this Memorandum Opinion and Order, will deem Gose's assertion that a MCADC corrections officer gave her a copy of the bench warrant as admitted.  See Hunt v. Cromartie, 526 U.S. at 551.

forth this fact); Response at 1-2 (not controverting this fact).  On April 1, 2008, Gose was arrested

by the Gallup Police Department on the same October bench warrant.[4]  See Complaint ¶ 13, at 3.

On April 29, 2008, the Sierra County district court recalled the bench warrant.  See Complaint ¶ 14,

at 3-4; Motion ¶ 9, at 3 (setting forth this fact); Response at 1-2 (not controverting this fact).  The

only substantive allegation against McKinley County is that no one from McKinley County provided

a return for Gose's arrest on the bench warrant and that, as a result, the warrant "was not cleared

from NCIC."[5]  Complaint ¶ 14, at 3-4.  See Motion ¶ 10, at 3 (setting forth this fact); Response at

_____

   [4] In its motion, McKinley County asserts: "On April 1, 2008, Plaintiff was rearrested by the Gallup Police Department on the same October bench warrant."  Motion ¶ 8, at 3 (citing Complaint ¶ 13, at 3).  In her response, Gose disputes this fact, stating that the allegation is inaccurate.  Gose does not direct the Court's attention to evidence disputing this asserted fact.  In her affidavit, Gose does not specifically address this allegation.  N.M.LR-Civ.56.1(b) states:

> The memorandum in support of the motion must initially set out a concise statement of all material facts as to which movant contends no genuine issue exists.  The facts must be numbered and must refer with particularity to those portions of the record upon which movant relies.

> A memorandum in opposition to the motion must contain a concise statement of the material facts as to which the party contends a genuine issue does exist.  Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the opposing party relies, and must state the number of the movant's fact that is disputed.  All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted.

D.N.M.LR-Civ. 56.1(b).  Because Gose does not refer with particularity to the portion of the record upon which she relies, the Court will deem McKinley County's asserted fact admitted.  See D.N.M.LR-Civ. 56.1(b).  It is possible that Gose disputes the word "rearrested," because she contends that MCADC correctional officers arrested her on September 27, 2007.  Although the Court will deem McKinley County's asserted fact admitted, it will modify the asserted fact's language to conform with the evidence in the record -- omitting any reference to a previous arrest by the Gallup Police Department -- so that the fact will state: "On April 1, 2008, Gose was arrested by the Gallup Police Department on the same October bench warrant."

   [5] The National Crime Information Center ("NCIC") is a computerized index of criminal-justice information. The system includes listings of individuals for whom federal warrants are outstanding. The New Mexico Crime Information Center ("NMCIC") holds listings of

1-2 (not controverting this fact).  McKinley County asserts that, other than the Sierra County district

court's statements in recalling the bench warrant -- "Despite the numerous attempts by the State and

the APPO, the detention center in McKinley County has not provided a return for the Defendant's

arrest in late 2007."  Complaint ¶ 14, at 4  -- there is no evidence that McKinley County or its agents

failed to provide a return of service to the district court at any time.  See Motion ¶ 11, at 3 (setting

forth this fact); Response at 1-2 (not controverting this fact).  MCADC does not have authority to

cancel or modify a bench warrant that the Sierra County district court issues.  See Ashley Aff. ¶ 6,

at 2.[6]

_____

individuals for whom New Mexico warrants are outstanding.  The Court believes that, because Gose
was arrested under a state and not a federal warrant, her warrant must not have been cleared from
NMCIC.

      [6] In its motion, McKinley County states: "McKinley County Detention Center does not have
the authority to cancel or modify a Bench Warrant issued by the Sierra County Court."  Motion ¶ 12,
at 3 (citing Ashley Aff.).  In Ashley's affidavit, Ashley states: "McKinley County Detention Center
does not have the authority to cancel or modify a Bench Warrant issued by a Sierra County District
Judge."  Ashley Aff. ¶ 6, at 2.  In her Response, Gose disputes this asserted fact, stating that the
allegation is inaccurate.  Gose states: "[I]t is clear under New Mexico's laws and rules that, at the
time of Plaintiff's arrest in 2007, a correctional officer did have the authority to . . . cancel a warrant
by signing the return and forwarding it to the court which issued the warrant."  Response at 6.  In
support of her statement, Gose cites New Mexico statutes and rules.  Section 33-3-28 of the New
Mexico statutes states:

> Jailers and any employee of a local jail who has, at the particular time, the principal
> duty to hold in custody any person accused or convicted of a criminal offense or
> placed in the legal custody or supervision of a local jail shall have the power of a
> peace officer with respect to arrests and enforcement of laws when on the premises
> of a local jail, while transporting a person committed to or under the supervision of
> a local jail, while supervising any person committed to or under the supervision of
> a local jail anywhere within the state or when engaged in any effort to pursue or
> apprehend such a person.

NMSA 1978, § 33-3-28A.  Rule 5-210 NMRA states:

> If the arresting officer has the warrant in his possession at the time of the
> arrest, a copy shall be served on the defendant upon arrest.  If the officer does not

## PROCEDURAL BACKGROUND

On April 21, 2010, Gose filed her Complaint for Damages Due to a Deprivation of Rights Secured by the Constitution and Laws of the United States and New Mexico Pursuant to the Federal Civil Rights Act of 1871 (42 U.S.C. § 1983) and Pursuant to the Tort Claims Act (NMSA, 1978, §§ 41-4-1 et seq.) in the Eleventh Judicial District Court, McKinley County, State of New Mexico. See Doc. 1-1.  On May 3, 2010, McKinley County removed the case, asserting that the Court had original jurisdiction over the action pursuant to 28 U.S.C. § 1331.  See Defendant's Notice of Removal, filed May 3, 2010 (Doc. 1).

On January 20, 2011, McKinley County filed the Defendant's Motion for Summary Judgment.  See Doc. 21.  In its motion, McKinley County argues that the Court should dismiss the "John Does," because Gose has not  made any effort to ascertain the identity of the alleged individual actors.  McKinley County argues that Gose's § 1983 claim fails, because, even if Gose could establish a constitutional violation, she cannot point to any McKinley County policy which caused the alleged deprivation.  McKinley County also argues that, even if Gose's allegation that

---

have the warrant in his possession at the time of the arrest, the officer shall then inform the defendant of the offense and of the fact that a warrant has been issued and shall serve the warrant on the defendant as soon as practicable.

. . . .

   The arresting officer shall make a return to the court which issued the warrant.

Rule 5-210 NMRA.  Neither the statute nor the rule gives a correctional officer the power to cancel or modify a bench warrant.  From a logical standpoint, it would seem that only a court could modify a court order.  Accordingly, Gose has not presented evidence or legal authority that the MCADC has the authority to cancel or modify a bench warrant, but she has presented evidence that an arresting officer must make a return of the warrant to the court which issued the warrant.  This evidence thus does not dispute McKinley County's asserted fact, and the Court will deem the asserted fact admitted.  See D.N.M.LR-Civ. 56.1(b).

the Defendants failed to provide a return of service is correct, this failure does not rise to a constitutional violation.  The Defendants also argue that Gose's claims under the NMTCA fail.

On February 7, 2011, Gose filed the Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment.  See Doc. 22.  In her response, Gose argues that McKinley County did not have proper policies in place concerning service and cancellation of warrants, and does not properly supervise or train its correctional officers.  Gose further argues that, with respect to the unknown person Defendants, although she does not know the identity of the correctional officer who arrested her but never canceled the warrant which was issued subsequent to the arrest, McKinley County should.

On February 24, 2011, McKinley County filed the Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment.  See Doc. 24.  McKinley County argues that the Court should grant summary judgment, because Gose has failed to demonstrate an issue of material fact.  McKinley County argues that Gose's § 1983 claim fails, because there is no evidence that MCADC employees were executing the McKinley County's policies, and because there is no evidence of deliberate indifference in McKinley County's failure to train or supervise the correctional officers.  McKinley County also argues that Gose's NMTCA claims fail, because there is no evidence that an employee or agent of the Defendant arrested her, because the NMTCA does not waive immunity for alleged negligent supervision, and because Gose cannot establish the requisite elements of either false arrest or false imprisonment.

At the hearing, McKinley County argued that Gose's affidavit was a sham affidavit.  It also argued that, even if the Court relies on Gose's affidavit in ruling on its motion, the Court should grant summary judgment, because Gose has failed to name an individual who violated her constitutional rights, and because negligence is not a sufficient basis for a § 1983 claim.  The Court,

when questioning Gose's counsel, stated: "Well, what do you do with -- I mean, by all -- by all accounts it looks like it's just a mess up.  I mean there's no[thing] intentional here."  Tr. at 17:2-4 (Court).  In response, Gose's counsel stated: "This is kind of like the it's' kind of like negligent administrat[ion] of a[n] [ad]ministerial act or something along those lines.  Whoever the ar[resting] officer [is] has administerial duty to clear the warrant, who serves the warrant has that administerial . . . duty to clear it."  Tr. at 17:7-11 (Stripp).[7]  The parties thus appear to agree that this case is a

---

[7] For the last fifteen years, the law in the Tenth Circuit has been that law enforcement officers are entitled to absolute "quasi-judicial" immunity for their actions in executing facially valid warrants, writs, and other court orders, such as bench warrants.  See Whitesel v. Sengenberger, 222 F.3d 861, 867-70 (10th Cir. 2000)(recognizing that, "[a]lthough absolute immunity generally extends to non-judicial officers performing discretionary judicial acts, some circuits, including our own, have held that those performing ministerial acts at the direction of a judge are also entitled to absolute immunity," and holding that a pretrial service officer, who, acting as a bond commissioner, issued a Temporary Restraining Order, was entitled to qualified immunity); Turney v. O'Toole, 898 F.2d 1470, 1472 (10th Cir. 1990)(explaining that, "just as judges acting in their judicial capacity are absolutely immune from liability under section 1983, official[s] charged with the duty of executing a facially valid court order enjoy[] absolute immunity from liability for damages in a suit challenging conduct prescribed by that order," and holding that a state prison superintendent and psychologist were entitled to absolute immunity when they transferred the defendant to the facility pursuant to a facially valid court order)(quotations and citations omitted)(alteration in the original); Valdez v. City and County of Denver, 878 F.2d 1285, 1287 (10th Cir. 1989)(holding that "an official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct prescribed by that order"); Jacobs v. Dujmovic, 752 F. Supp. 1516, 1524-25 (D. Colo. 1990)(holding that law enforcement officers were entitled to absolute immunity for executing a writ of restitution); Dickerson v. Leavitt Rentals, 995 F. Supp. 1242, 1249 (D. Kan. 1998).  See also Henry v. Farmer City State Bank, 808 F.2d 1228, 1238-39 (7th Cir. 1986)(citing cases in 1st, 3d, 5th, and 8th Circuits, all in accord, and explaining "police officers, sheriffs, and other court officers who act in reliance on a facially valid court order are entitled to quasi-judicial immunity from suit under § 1983 for damages").  Absolute immunity "defeats a suit at the outset . . . ."  Imbler v. Pachtman, 424 U.S. 409, 419 n.13 (1976).  And it is irrelevant to the executing officer's absolute immunity from suit under § 1983 if the court order violates a statute, or is erroneous or even unconstitutional, as long as it is facially valid."  Turner v. O'Toole, 898 F.2d at 1473 ("'Facially valid' does not mean 'lawful.').  As a policy matter, law enforcement officers "must not be required to act as pseudo-appellate courts scrutinizing the orders of judges" because "[t]he public interest demands strict adherence to judicial decrees."  Valdez v. City and County of Denver, 878 F.2d at 1289.  The Tenth Circuit, however, has stated that:

"A prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's

negligence case, and that it does not involve an intentional omission in not making a return of the

bench warrant to the Sierra County district court.  See Tr. at 21:14-16 ("[C]ounsel seems to agree

this is a negligence case . . . .")(Martinez); id. at 17:7-11 (Stripp).

## LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT

Rule 56(c) states that summary judgment "should be rendered if the pleadings, the discovery

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c)(2).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to

support the nonmoving party's case."  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891

(10th Cir. 1991)(internal quotation marks omitted).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986)("Of course, a party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of the [record],

together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of

material fact.")(internal quotation marks omitted).  Once the movant meets this burden, rule 56(e)

requires the non-moving party to designate specific facts showing that there is a genuine issue for

trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

256 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving

---

decision not to drop charges but to proceed to trial -- none of these decisions will
shield a police officer who deliberately supplied misleading information that
influenced the decision . . . . *If police officers have been instrumental in the
plaintiff's continued confinement or prosecution, they cannot escape liability by
pointing to the decisions of prosecutors or grand jurors, or magistrates to confine
or prosecute him. They cannot hide behind the officials whom they have defrauded.*"

Pierce v. Gilchrist, 359 F.3d 1279, 1292 (10th Cir. 2004)(quoting Jones v. City of Chicago, 856 F.2d
985, 994 (7th Cir. 1988)(emphasis in original)).

party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal quotation marks omitted).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  Rule 56 provides that "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'" (citation omitted)).  Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e) and Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

To survive summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid summary judgment.  Vitkus v. Beatrice Co., 11 F.3d at 1539.  Rather, there must be sufficient evidence on which the fact-finder could reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improv. Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (internal citations omitted).  Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind three principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party and construe all evidence in the light most favorable to the non-moving party.  See Hunt v. Cromartie, 526 U.S. at 550-55.  Third, the court cannot decide any issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

## MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983

There is no concept of strict supervisor liability or respondeat superior for a constitutional deprivation under § 1983.  See Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  A

plaintiff suing a municipality pursuant to § 1983 for the acts of one or more of its employees must prove: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation."  Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d 1313, 1316 (10th Cir. 1998)(citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)).  "When the claim is a failure to act, the plaintiff must demonstrate the municipality's inaction was the result of deliberate indifference' to the rights of its inhabitants."  Graves v. Thomas, 450 F.3d 1215, 1218 (10th Cir. 2006)(citation omitted).

To establish supervisory or municipal liability, the plaintiff must show that "an affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise."  Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988)(quotations omitted)(alteration in the original).  "Negligence is not a basis for liability under § 1983 . . . ."  Darr v. Town of Telluride, Colo., 495 F.3d 1243, 1257 (10th Cir. 2007). The Tenth Circuit has stated that "[l]iability under § 1983 must be predicated upon a *deliberate* deprivation of constitutional rights by the defendant, and not on negligence."  Darr v. Town of Telluride, Colo., 495 F.3d at 1256 (emphasis in original)(internal quotation marks omitted)(quoting Jojola v. Chavez, 55 F.3d 488, 490 (10th Cir. 1995).

A municipality cannot be held liable under § 1983 for an employee's acts if the employee committed no constitutional violation.  See Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d at 1316.  See Jonas v. Board of Comm'rs of Luna County, 699 F. Supp. 2d 1284, 1302 (D.N.M. 2010)(Browning, J.)("Naturally, the governing body cannot be held liable for an unconstitutional policy or practice 'if the jury finds that the municipal employee committed no constitutional violation.'" (quoting Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d at 1316; citing Scott v. Clay County, Tenn., 205 F.3d 867, 879 (6th Cir. 2000)(holding that the conclusion that no

officer-defendant deprived plaintiff of any constitutional right a fortiori defeats claim against county), cert. denied, 531 U.S. 874 (2000); Kiser v. City of Huron, 219 F.3d 814, 816 (8th Cir. 2000)(stating that a plaintiff must first establish that an officers' actions are unlawful before municipality can be held liable); Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 596-97 (7th Cir. 1997)(determining that conclusion that officers did not violate the Constitution in seizing plaintiff's decedent mandated the conclusion that neither city nor police chief could be held liable); Evans v. Avery, 100 F.3d 1033, 1039-40 (1st Cir. 1996)(finding that, absent constitutional violation by officer, city cannot be held liable); Brodnicki v. City of Omaha, 75 F.3d 1261, 1266 (8th Cir. 1996)(holding that, because officers did not violate plaintiff's rights, it follows that claim against city under theory of inadequate custom or municipal custom lacks merit); Quintanilla v. City of Downey, 84 F.3d 353, 355 (9th Cir. 1996)(holding public entity not liable under § 1983 for policy "that can cause constitutional deprivations, when the factfinder concludes that an individual officer, acting pursuant to the policy, inflicted no constitutional harm to the plaintiff"); Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994)(holding that, although liability of municipalities does not turn on liability of individual officers, "it is contingent on a violation of constitutional rights"; where no constitutional violation occurred, municipality could not be held liable)).

## ANALYSIS

The Court will dismiss without prejudice the unnamed defendants from the action, because Gose has not offered a description of the unnamed Defendants that is sufficient to identify them for service of process and inclusion in the case.  The Court will grant summary judgment on Gose's § 1983 claim, because there is no evidence that a correctional officers at MCADC intentionally failed to file a return of service for Gose's bench warrant, and, furthermore, there is no evidence that a policy was the moving force behind the constitutional deprivation or that the municipality's failure

to train or supervise was the result of deliberate indifference.  The Court remands all remaining claims, which sound in state-law, to the Eleventh Judicial District Court, McKinley County, State of New Mexico.

## I.     THE COURT WILL DISMISS WITHOUT PREJUDICE THE UNNAMED DEFENDANTS FROM THE ACTION.

McKinley County argues that the Court should dismiss the John Does, because Gose has not offered any additional description of the unnamed Defendants that would assist in identifying them for eventual service and inclusion in the case, because Gose did not serve any written discovery or make any other effort to ascertain the identity of any alleged actors, and because Gose has not sought to amend her Complaint to identify or to provide more specific descriptions of the unnamed Defendants.

In her response, Gose states that, with respect to the unknown Defendants, MCADC employed a correction officer who arrested her, but then never canceled the warrant which was issued subsequent to the arrest.  Gose asserts that she does not know the officer's identity, but that McKinley County should.

"Courts have generally recognized the ability of a plaintiff to use unnamed defendants so long as the plaintiff provides an adequate description of some kind which is sufficient to identify the person involved so process eventually can be served." Roper v. Grayson, 81 F.3d 124, 126 (10th Cir. 1996)(citing Billman v. Indiana Dep't of Corrs., 56 F.3d 785, 789 (7th Cir. 1995); Colle v. Brazos County, Tex., 981 F.2d 237, 243 (5th Cir. 1993); Dean v. Barber, 951 F.2d 1210, 1216 (11th Cir. 1992); Munz v. Parr, 758 F.2d 1254, 1257 (8th Cir. 1985); Maggette v. Dalsheim, 709 F.2d 800, 803 (2d Cir. 1983); Schiff v. Kennedy, 691 F.2d 196, 197-98 (4th Cir. 1982); Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)).  Rule 4(m) of the Federal Rules of Civil Procedure states:

> If a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

To avoid dismissal of unnamed defendants, a plaintiff must provide an adequate description sufficient to identify the unnamed defendants.  See Roper v. Grayson, 81 F.3d at 126 (finding that the plaintiff provided an adequate description sufficient to identify the unnamed defendants when, given the plaintiff's description, it was clear who the unnamed defendants were from the use-of-force reports the defendants attached to their motion for summary judgment).  In Fiser v. Oklahoma of Department of Corrections Unknown State Actor and/or Actors, 213 F. App'x 704 (10th Cir. 2007), the Tenth Circuit stated that the district court did not err in entering summary judgment in favor of the unnamed defendants when the "plaintiffs' amended complaint did not describe the person or persons they claim injured them."  213 F. App'x at 708 n.2.  In Williams v. Rodriguez, 509 F.3d 392 (7th Cir. 2007), the United States Court of Appeals for the Seventh Circuit modified the district court's grant of summary judgment -- for an unknown and unnamed police officer whom the plaintiff sued pursuant to § 1983 for deliberate indifference to medical needs -- to a dismissal of the defendant from the case.  See 509 F.3d at 402.  The Seventh Circuit stated:

> Williams brought this deliberate indifference claim against Officer Rodriguez and an unknown and unnamed Chicago police officer.  In his complaint, Williams stated that he would seek leave to amend his complaint once he learned the identity of this unknown and unnamed defendant.  Discovery was Williams's opportunity to identify this defendant, and he failed to do so before discovery closed on August 18, 2006. Due to Williams's failure to identify this defendant and the lack of any record that this individual was served with process, the district court's grant of summary judgment for this unknown and unnamed defendant is modified to dismiss this defendant from the case.

509 F.3d at 402.

In her Complaint, Gose stated:

> Plaintiff is unaware of the true names and capacities, whether individual, corporate, associate or otherwise, of the Defendants sued herein as Unknown Persons 1-100 or any of them, and for that reason sues said Defendants, and each of them, by such fictitious names. Plaintiffs will seek leave of Court to amend this complaint to state the true names and capacities of Unknown Persons 1-100, inclusive, when those names and capacities have been ascertained.

Compliant ¶ 3, at 2. Gose has not provided any additional description of the unknown Defendants. In her response, Gose states only that "the McKinley County Detention Center employed a correctional officer who arrested [her], but then never canceled the warrant which was issued subsequent to the arrest" and that she "does not know the identity of the officer, but McKinley County should." Response at 7. In her affidavit, Gose states that, "[a]s best as [she] can remember, a corrections officer at the McKinley County Adult Detention Center gave [her] a copy of the bench warrant." Affidavit ¶ 10, at 3.

Because Gose has not provided an adequate description, sufficient to identify the unnamed defendants, the Court will dismiss without prejudice the unnamed Defendants. Although Gose has provided evidence that a MCADC corrections officer gave her a copy of the bench warrant, see Affidavit ¶ 10, at 3, Gose has not produced any other particulars which would help to identify the unnamed Defendants. Discovery is completed, and Gose has not identified the unnamed Defendants or provided additional details through which the unnamed Defendants might be identified and served. See Williams v. Rodriguez, 509 F.3d at 402. Because the general description of MCADC corrections officers is not an adequate description, sufficient to identify the unnamed Defendants, the Court will dismiss without prejudice the unnamed Defendants. See Lujan ex rel. Lujan v. County of Bernalillo, 354 F. App'x 322, 325 (10th Cir. 2009)(affirming the district court's dismissal without prejudice of the federal claims against the unidentified SWAT team members, when the

district court noted that the plaintiff had been provided with ample time to name and serve them "during the course of the discovery process, yet she had not done so" (citing Williams v. Rodriguez, 509 F.3d at 402 (stating that dismissal is proper where plaintiff failed to identify and serve unnamed defendant before close of discovery); Roper v. Grayson, 81 F.3d at 126 (observing that dismissal may be appropriate when unnamed defendants remain unidentified for a lengthy period of time); Fed. R. Civ. P. 4(m)(providing for dismissal without prejudice for failure to serve defendant in a timely fashion)).

## II.     THE COURT WILL GRANT SUMMARY JUDGMENT ON GOSE'S § 1983 CLAIM.

McKinley County argues that Gose's claim under § 1983 fails, because government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.  McKinley County argues that, to establish its liability, Gose must show that the institution's policies caused the constitutional violation.  McKinley County argues that, even if Gose could establish a constitutional violation, she cannot point to any McKinley County policy which caused the alleged deprivation.  McKinley County asserts that, instead, Gose argues that it was McKinley County's failure to establish proper procedures that led to the alleged constitutional violation and not the following of an established policy, as is required for institutional liability under § 1983.  McKinley County argues that, assuming that Gose's allegations concerning McKinley County's alleged failure to provide a return of service is correct, such a failure does not rise to a constitutional violation, because a claim for negligence is insufficient to establish liability under § 1983.  McKinley County further argues that Gose has not sufficiently demonstrated the deliberate indifference required for a failure to act claim.

Gose argues that a MCADC correctional officer arrested Gose on September 27, 2007.  Gose alleges that, once the Sierra County district court issued the warrant, the arresting officer had a duty

to serve the warrant on Gose and to make a return of the warrant to the Sierra County district court. Gose argues that the officer did not do so.  Gose thus argues that McKinley County does not have proper policies in place concerning the service and cancellation of warrants, and does not properly train or supervise its correctional officers.

There is no evidence in the record under which Gose can establish McKinley County's liability under § 1983, because there is no evidence which demonstrates intentional conduct.  In her Complaint, Gose asserted claims of false arrest and false imprisonment under § 1983, based on the McKinley County correctional officer's failure to clear the bench warrant or to file a return of service of the bench warrant.  Although there is evidence that Gose's constitutional rights were violated when she was arrested a second time for the alleged probation violations, see Donaldson v. Mugavero, 126 F. App'x 63, 65 (3d Cir. 2005)(finding that the facts alleged showed the officer's conduct violated a constitutional right when, before the plaintiff's arrest, the "Superior Court vacated [the plaintiff's] conviction and remanded for retrial, the Supreme Court denied the District Attorney's allocatur petition, and the Court of Common Pleas declared a nolle prosequi" and, because there "were no active charges," the officer deprived the plaintiff of his "Fourth Amendment right to be free from an unlawful seizure" when he arrested the plaintiff), there is no evidence that the corrections officer intentionally failed to make a return of the bench warrant.  The Tenth Circuit has stated that "[l]iability under § 1983 must be predicated upon a *deliberate* deprivation of constitutional rights by the defendant, and not on negligence."  Darr v. Town of Telluride, Colo., 495 F.3d at 1256 (emphasis in original)(internal quotation marks omitted)(quoting Jojola v. Chavez, 55 F.3d at 490).  At the hearing, the parties appeared to agree that this case is a negligence case, and that it does not involve an intentional failure to return the bench warrant to the Sierra County district court.  See Tr. at 21:14-16 ("[C]ounsel seems to agree this is a negligence case . . . .")(Martinez);

id. at 17:7-11 (Stripp).  Gose has not directed the Court's attention to, and the Court has not found, evidence in the record that the corrections officer intentionally failed to make a return of the bench warrant.  Because there is no evidence of deliberate action -- at most, there is evidence only of negligence -- there is no basis under which Gose may establish McKinley County's liability pursuant to § 1983.  See Darr v. Town of Telluride, Colo., 495 F.3d at 1257 ("Negligence is not a basis for liability under § 1983 . . . .").  The Court will therefore grant summary judgment against Gose's § 1983 claim.

Furthermore, Gose's § 1983 claim fails, because there is no evidence that a McKinley County policy was a moving force behind the alleged constitutional deprivation.  A plaintiff suing a municipality pursuant to § 1983 for the acts of one or more of its employees must prove: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation."  Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d at 1316 (citing Monell v. Dep't of Social Servs., 436 U.S. at 694).  There is no evidence in the record that McKinley County had a custom or policy of permitting its correctional officers to fail to make a return of a warrant.  As the Tenth Circuit stated in Jenkins v. Wood, 81 F.3d 988 (10th Cir. 1996):

> Neither the Jenkinses' brief nor the record admits to any evidence that the City of Topeka had a custom or policy of permitting its officers to use excessive force or execute illegal warrants. . . . Nor is there any evidence the City of Topeka promoted through some custom or policy the execution of illegal warrants.

81 F.3d at 994.  Gose's § 1983 claim thus fails on this basis.[8]

---

[8] At the hearing, McKinley County stated that it could not be held liable on the basis of practice or custom, because if the Court dismissed the unnamed Defendants, there would be no underlying person to attach liability to.  Courts have recognized that, "[w]hile the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights."  Scott v. Henrich, 39 F.3d at 916.  In Jiron v. City of Lakewood, 392 F.3d 410

Moreover, Gose's contention that McKinley County failed to adequately supervise or train its correctional officers fails as a matter of law, because there is no evidence that McKinley County's failure to properly train or to supervise its correctional policies was the result of McKinley County's deliberate indifference. "When [a plaintiff's § 1983] claim is a failure to act [claim], the plaintiff must demonstrate the municipality's inaction was the result of deliberate indifference' to

_____

(10th Cir. 2004), the Tenth Circuit stated:

> [S]ome dismissals against the officer on the basis of qualified immunity do not preclude a suit against the municipality. However, when a finding of qualified immunity is based on a conclusion that the officer has committed no constitutional violation-- i.e., the first step of the qualified immunity analysis -- a finding of qualified immunity does preclude the imposition of municipal liability.

392 F.3d at 419 n.8 (citing Hinton v. City of Elwood, Kan., 997 F.2d 774, 782 (10th Cir. 1993)). Because a municipalities' liability does not turn on the liability of individual officers, the Court does not believe that it may properly find that McKinley County is not liable solely on the basis that the Court dismissed without prejudice the unnamed Defendants. The Court finds, however, that McKinley County cannot be held liable on the basis of practice or custom, because there is no evidence that a McKinley County policy was a moving force behind the alleged constitutional deprivation. Furthermore, there is no evidence that a McKinley County employee committed a constitutional violation. Gose alleges that her constitutional rights were violated when she was arrested in April 2008 on the October 2007 bench warrant. See Tr. at 18:8-12 (Court, Stripp)("THE COURT: And the point where you're saying that . . . Gose's constitutional rights were [violated] is when she was rearrested? . . . MR. STRIPP: Yes, Your Honor."). The undisputed material facts establish that, on April 1, 2008, Gose was arrested by the Gallup Police Department on the same October 2007 bench warrant. See Complaint ¶ 13, at 3. There is thus no evidence that a McKinley County employee committed the constitutional violation.

The Court considered whether absolute immunity applied in this case. The Tenth Circuit has stated that law enforcement officers are entitled to absolute "quasi-judicial" immunity for their actions in executing facially valid warrants, writs, and other court orders, such as bench warrants. See Whitesel v. Sengenberger, 222 F.3d 861, 867-70. When the McKinley County correctional officers allegedly arrested Gose, they arrested Gose at the direction of Gose's probation officer. See Response at 5. They did not arrest Gose pursuant to a court order or warrant. The Court thus does not believe that the McKinley County correctional officers would be entitled to absolute "quasi-judicial" immunity for their actions. The Gallup Police Department arrested Gose in April 2008 pursuant to a bench warrant. The Gallup Police Department officers might thus be entitled to absolute "quasi-judicial" immunity for their actions in executing the facially valid bench warrant, but they are not Defendants in this action.

-24-

the rights of its inhabitants." Graves v. Thomas, 450 F.3d at 1218 (citation omitted). "A supervisor is not liable under section 1983 unless an affirmative link exists between the [constitutional] deprivation and . . . the supervisor's ' . . . failure to supervise." Meade v. Grubbs, 841 F.2d at 1527 (citations omitted).

> [I]f the inaction theory rests on an alleged failure to train, the plaintiff must prove "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" for additional training.

Jenkins v. Wood, 81 F.3d at 994 (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989)). "It is not enough, however, for appellant to show that there were general deficiencies in the county's training program for jailers." Lopez v. LeMaster, 172 F.3d 756, 760 (10th Cir. 1999). A plaintiff must "identify a specific deficiency in the county's training program closely related to his ultimate injury, and must prove that the deficiency in training actually caused his jailer to act with deliberate indifference to his safety." Lopez v. LeMaster, 172 F.3d at 760 (citing City of Canton, Ohio v. Harris, 489 U.S. at 391). "A supervisor or municipality may be held liable where there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable." Meade v. Grubbs, 841 F.2d at 1527 (citation omitted).

In Lopez v. LeMaster, the Tenth Circuit found that the plaintiff failed to establish a claim for failure to provide adequate training and supervision of jail personnel, and affirmed the district court's grant of summary judgment on the plaintiff's failure-to-provide-adequate-training-and-supervision claim. The Tenth Circuit stated that the plaintiff did not meet his burden in proving that the deficiencies in training or supervision "caused his jailer to act with deliberate indifference to his safety," stating:

> [Plaintiff] not only did not name his jailer as a defendant in this suit, he failed

to identify him at all. That omission seriously undermines his attempt to hold the county liable for any actions deliberately taken by the jailer. [Plaintiff] has presented no evidence concerning deficiencies in training of the particular jailer involved in his case. Nor has he shown that the county had a uniform policy of providing its jailers with insufficient training in the areas closely related to his ultimate injury from which we might infer that his particular jailer's training also was insufficient.

Gordon Paige [-- a former jailer at the facility --] admitted that the county had scheduled him for eventual CLEET training. There is no showing that [plaintiff's] jailer had not received such training, or that his failure to receive it was the cause of appellant's injuries. See City of Canton, 489 U.S. at 391 ("[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."). The same weaknesses exist with regard to his claim that the jailer was poorly supervised: appellant simply has failed to tie this claim to his injuries. We therefore conclude that the district court properly granted summary judgment to the county on this claim.

172 F.3d at 760. As in Lopez v. LeMaster, where the Tenth Circuit found that the district court properly granted summary judgment in favor of the county on the plaintiff's failure-to-train-and-supervise claim, because the plaintiff did not identify his jailer, did not present evidence concerning deficiencies in training of the particular jailer involved in his case, and did not show that the county had a uniform policy of providing its jailers with insufficient training in areas closely related to his injury, Gose has not identified the correctional officer whom she alleges did not properly clear the bench warrant, she has not presented evidence concerning any deficiencies in the correctional officer's training, and she has not presented evidence that McKinley County has a uniform policy in not training its officers in the area of returning bench warrants. The Court thus finds that there is no genuine issue of material fact whether McKinley County failed to train its correctional officers. The Court will therefore grant summary judgment on Gose's failure-to-train claim. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (stating that, to avoid summary judgment, there must be sufficient evidence on which the fact-finder could reasonably find for the nonmoving party).

The Court will also grant summary judgment on Gose's failure-to-supervise claim. As in

Lopez v. LeMaster, where the Tenth Circuit found that the plaintiff did not present evidence to tie poor supervision to his injuries, Gose has not presented evidence of the correctional officer who failed to make a return of the bench warrant, and has not presented evidence directly connecting the failure to make the return to any lack of supervision.  The Court will therefore grant summary judgment on Gose's failure-to-supervise claim under § 1983.  See Lopez v. LeMaster, 172 F.2d at 760 ("The same weaknesses exist with regard to his claim that the jailer was poorly supervised: appellant simply has failed to tie this claim to his injuries.  We therefore conclude that the district court properly granted summary judgment to the county on this claim."); Meade v. Grubbs, 841 F.2d at 1527 (stating that a supervisor is not liable under § 1983 unless an affirmative link exists between the constitutional violation and the failure to supervise); Lynn v. Simpson, No. 97-3209-JWL, 2000 WL 1389922, at *5 (D. Kan. Feb. 28, 2000)(stating that the court would not reconsider its grant of summary judgment on the plaintiff's claims of inadequate supervision under § 1983 when the "plaintiff [did not] present evidence showing that the guard's actions were directly linked to a lack of supervision, as required by *Meade*").

## III.  THE COURT REMANDS GOSE'S STATE-LAW CLAIMS TO NEW MEXICO STATE COURT.

The Defendants are entitled, therefore, to summary judgment on Gose's federal claim.  Having dismissed all claims on which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c).  Gose originally brought her claims in state court.  The Court therefore remands all remaining claims -- all of which sound in state-law -- to state court.  See McWilliams v. Jefferson County, 463 F.3d 1113, 1118 (10th Cir.2006)("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and

comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims")(quoting <u>Carnegie–Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7, 357 (1988))).  "[A] district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate." <u>Carnegie–Mellon Univ. v. Cohill</u>, 484 U.S. at 357.  Here, while there are no viable federal causes of action, there is no sound reason not to allow Gose to attempt to convince the state court that her situation deserves some relief under state law.

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment, filed January 20, 2011 (Doc. 21) is granted in part and denied in part.  The Court dismisses without prejudice the unnamed Defendants from the action.  The Court grants summary judgment against Plaintiff Charity Gose and for Defendant Board of County Commissioners of the County of McKinley on her 42 U.S.C. § 1983 claim.  The Court remands the state law claims and the case to the Eleventh Judicial District Court, McKinley County, State of New Mexico.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

William G. Stripp
Ramah, New Mexico

    *Attorney for the Plaintiff*

William D. Slease
Jonlyn M. Martinez
Slease & Martinez, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendant Board of County*
      *Commissioners of the County of McKinley*